**SO ORDERED,**



**Judge Jason D. Woodard**

**United States Bankruptcy Judge**

The Order of the Court is set forth below. The case docket reflects the date entered.

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF MISSISSIPPI

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| BRADLEY S. PRATHER, | ) | Case No.:   22-10183-JDW |
| | ) | |
| Debtor. | ) | Chapter 13 |

| | | |
|---|---|---|
| BRADLEY S. PRATHER, | ) | |
| | ) | |
| Plaintiff. | ) | |
| | ) | |
| v. | ) | A.P. No.:   22-01005-JDW |
| | ) | |
| GEORGE P. and CAROLYN PRATHER, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

This adversary proceeding came before the Court for trial on March 28, 2023, on the *Complaint to Set Aside Foreclosure*[1] filed by the debtor-plaintiff

---

[1] (A.P. Dkt. # 1).

1

Bradley S. Prather against the defendants George and Carolyn Prather.[2] The plaintiff seeks to set aside a foreclosure sale by the defendants on the home he initially shared with his ex-wife, Jennifer Prather. The plaintiff makes two arguments, one under federal law and one under state law. First, he contends the defendants violated the co-debtor stay found in § 1301 of the Bankruptcy Code[3] by conducting the foreclosure sale while Jennifer's bankruptcy case was pending. Second, he argues that the defendants failed to comply with the noticing provisions in the deed of trust.

The Court has heard the testimony of the parties, reviewed the admitted exhibits, analyzed the arguments of counsel and relevant law, and concludes that the plaintiff was not protected by the co-debtor stay in Jennifer's case and the defendants complied with all noticing requirements in conducting the foreclosure. Judgment will be entered in favor of the defendants.

## I. JURISDICTION

This Court has jurisdiction pursuant to 28 U.S.C. §§ 151, 157(a) and 1334, and the *United States District Court for the Northern District of Mississippi's Order of Reference of Bankruptcy Cases and Proceedings Nunc Pro Tunc* dated August 6, 1984. This is a core proceeding as set forth in 28 U.S.C. § 157(b)(2)(A), (G), and (O).

---

[2] The plaintiff and the defendants are unrelated.
[3] "Bankruptcy Code" refers to 11 U.S.C. §§ 101-1532.

## II. FACTS AND RELEVANT PROCEDURAL HISTORY[4]

The plaintiff married Jennifer Prather in 2011. On August 21, 2015, Jennifer bought a home from the defendants, who owner-financed the purchase. Jennifer alone made a promissory note payable to the defendants for the purchase price and accepted the deed in her name only.[5] Both Jennifer and Bradley signed the deed of trust on the homestead, which was required by Mississippi law because both spouses would live in the house.[6] While the plaintiff attended the closing with Jennifer, the defendants credibly testified that they negotiated only with Jennifer throughout the sale process. The defendants also testified that all mortgage payments were received from Jennifer or her parents, never from the plaintiff.

After a year of paying "fairly well," Jennifer defaulted on the payments. In addition, she failed to pay the ad valorem taxes and the property was twice sold at a tax sale. The defendants have been forced to pay the taxes for several years. Further, the property fell into such a state of disrepair that the insurance company canceled the policy, leaving the house—the defendants' collateral—uninsured. As a result of these events of default, the defendants initiated foreclosure proceedings.

---

[4] To the extent any of the findings of fact are considered conclusions of law, they are adopted as such, and vice versa.
[5] Ex. P-A and C.
[6] Ex. P-B; Miss. Code Ann. § 89-1-29.

3

To stop the foreclosure and related legal proceedings, Jennifer (but not the plaintiff) filed her first chapter 13 bankruptcy case in January 2018.[7] That case was dismissed in May 2021.[8] She filed a second chapter 13 case a few days later, still in May 2021.[9]

The plaintiff and Jennifer then separated during the summer of 2021, and the police removed Jennifer from the property for reasons not entirely clear to this Court. A condition of Jennifer's bond was her agreement to not return to the property unless escorted by police. From that point forward, the plaintiff became, and remains, the only person living at, responsible for maintaining, and receiving mail at the home.

On October 18, 2021, this Court entered an agreed order lifting the automatic stay in Jennifer's then-active second chapter 13 bankruptcy case.[10] There was no mention of a co-debtor stay and the plaintiff did not sign the agreed order, although his testimony was clear that he was aware of the bankruptcy case.[11] The automatic stay having been lifted, the defendants then re-started foreclosure proceedings. They published the foreclosure sale in the *Southern Sentinel*, a newspaper of general circulation in Tippah County, for

---

[7] (Jennifer W. Prather, 18-10237).
[8] (Jennifer W. Prather, 18-10237, Dkt. # 74).
[9] (Jennifer W. Prather, 21-10939, Dkt. # 1).
[10] (Jennifer W. Prather, 21-10939, Dkt. # 34).
[11] The plaintiff testified that he contacted Jennifer's bankruptcy attorney about her bankruptcy case, knew that she was not making payments, and that he was not making payments.

4

four consecutive weeks preceding the sale date, posted notice of the sale at the Tippah County courthouse, and sent notice to the home more than a month before the sale date.[12] Without supporting evidence, the plaintiff testified that his mail was sometimes stolen around this time. The foreclosure sale took place on December 27, 2021, where the defendants made a credit bid and once again became the owners of the property.

A final decree of divorce was entered in the Chancery Court of Tippah County on January 5, 2022.[13] Although the plaintiff was awarded the home in the divorce property settlement, it had already been sold at the foreclosure sale on December 27, 2021, and title had passed to the defendants.

On January 31, 2022, Bradley Prather filed his chapter 13 case to stop eviction proceedings.

### III. CONCLUSIONS OF LAW

The plaintiff argues that at the time of the foreclosure, he was protected by the co-debtor stay in Jennifer's bankruptcy case. He contends that the foreclosure sale therefore violated federal bankruptcy law and should be set aside. Alternatively, he argues that the defendants failed to comply with the noticing provisions in the deed of trust and that the foreclosure sale was ineffective as a matter of state law. Both arguments fail.

---

[12] Ex. D-B and C.
[13] Ex. P-H.

5

### A. The Foreclosure Sale did not Violate § 1301 of the Bankruptcy Code.

Jennifer's bankruptcy case was active when the foreclosure sale took place, so she was protected by the automatic stay found in § 362 of the Bankruptcy Code until that stay was lifted prior to the foreclosure.[14] The plaintiff was not in bankruptcy at that time, so any stay that would have protected him would only have arisen in Jennifer's case. He contends he was protected by the co-debtor stay found in § 1301 of the Bankruptcy Code. Section 1301 provides, in pertinent part:

> (a) Except as provided in subsections (b) and (c) of this section, after the order for relief under this chapter, a creditor may not act, or commence or continue any civil action, to collect all or any part of a consumer debt of the debtor from any individual that is liable on such debt with the debtor, or that secured such debt. . . . .

The inapplicability of § 1301 here is analogous to the well-reasoned opinion of the Honorable Neil P. Olack in *In re Grinstead*.[15] As in *Grinstead*, the foreclosure sale here did not violate § 1301 because the plaintiff was not a co-debtor within the meaning of the statute. He was neither "liable on such debt" with Jennifer, nor did he "secure[] such debt."[16]

---

[14] (Jennifer W. Prather, 21-10939, Dkt. # 34).
[15] *In re Grinstead*, Case No. 09-50810-NPO, Dkt. # 58 (Bankr. S.D. Miss. Aug. 14, 2009).
[16] *Id.* at 4.

6

*1.    The Plaintiff is not Liable on Such Debt.*

The plaintiff is not liable for the debt because he did not sign the promissory note or any other document that would have made him liable. Jennifer alone signed the note and took ownership of the home. The plaintiff has no obligation to pay the defendants. Thus, he is not "liable on such debt" with Jennifer as specified in § 1301.

*2.    The Plaintiff did not Secure the Debt.*

The stronger argument is that the plaintiff "secured such debt" when he signed the deed of trust. But, again, *Grinstead* clearly demonstrates that Mississippi law does not support this position.[17] The plaintiff did not own the property and therefore could not convey any interest in it in the deed of trust. Instead, his signature on the deed of trust is merely indicative of his consent to Jennifer pledging her 100% ownership interest to the defendants.

The Mississippi statute governing the homestead interest as it relates to deeds of trust provides:

> A conveyance, mortgage, deed of trust or other incumbrance upon a homestead exempted from execution shall not be valid or binding unless signed by the spouse of the owner if the owner is married and living with the spouse. . .[18]

The Mississippi Supreme Court has held that this statute "mandates that any conveyance of [a] homestead without the joinder of both spouses is invalid. We

---

[17] *Id.* at 4-5.
[18] Miss. Code Ann. § 89-1-29.

have consistently held that such a conveyance is null and void 'as to both the husband and wife.'"[19] In other words, for one spouse to encumber a homestead, even if that spouse is the 100% owner of the property, the other spouse must consent.[20]

This is not the same as securing the debt, because the non-owner spouse has no property interest to grant. As the court explained in *Grinstead*:

> It does not follow, however, that by signing a deed of trust the non-owner spouse acts to secure the debt. It is well-settled law in Mississippi that a homestead right is not a property interest. The Mississippi Supreme Court has held that Miss. Code Ann. § 89-1-29 does not give the spouse any interest in the property, only the power to veto any attempted conveyance or [e]ncumbrance by the owner.[21]

The plaintiff here did not secure the debt because he had no property interest to convey. His signature on the deed of trust is more properly viewed as a waiver of his veto power against, or an acknowledgment of, Jennifer's encumbrance of the property.

The foreclosure sale did not violate the Bankruptcy Code, because the plaintiff is not considered a co-debtor within § 1301.

---

[19] *Grinstead* at 5 (quoting *Ward v. Ward*, 517 So. 2d 571, 572 (Miss. 1987)).
[20] *Grinstead* at 5.
[21] *Grinstead* at 5 (citing 7 ENCYCLOPEDIA OF MISSISSIPPI LAW § 62.39 (Jeffrey Jackson & Mary Miller eds., West 2001); *See also Ward*, 517 So. 2d at 572; *McFarlane v. Plant*, 188 So. 530, 531-32 (Miss. 1939)(holding that the law was the same even under the older statute - Code 1930, § 1778); *New Orleans Ry. & Mill-Supply Co. v. Gatti*, 27 So. 601, 601 (Miss. 1900) (holding that "[t]he right of Mrs. Gatti in the homestead of her husband was not a property right. It was a mere power of veto against conveyance of it by her husband without her consent.")).

8

### B. The Defendants Complied with the Noticing Provisions of the Deed of Trust.

The plaintiff argues that the defendants failed to comply with the contractual notice requirements in the deed of trust. The plaintiff has the burden of proof on this issue because a "sale by a trustee under a deed of trust is presumed valid and the burden of proof is on the party attacking this validity."[22]

This second argument fails because the deed of trust does not contain any particularized notice requirements. The only reference to notice in the deed of trust refers to the statutory notice required by Mississippi law:

> . . . if said grantor . . . should make default in any one or more of the obligations and conditions undertaken by them herein, then, said Trustee shall take possession of property and sell the same, or a sufficiency thereof to pay said indebtedness, at public outcry for cash to the highest bidder, such sale to be advertised and made in the manner sales of like property are required by law to be advertised and made under execution . . . .[23]

The statutory notice requirements are found in Section 89-1-55 of the Mississippi Code, which requires that a deed of trust foreclosure be advertised for three consecutive weeks preceding the sale in a newspaper published in or of general circulation in the county where the land is located, and by posting notice at the courthouse in that county.[24] The defendants complied with both

---

[22] *Est. of Stephens v. Est. of Palmer*, 324 So. 3d 1175, 1179 (Miss. Ct. App. 2021) (quoting *Myles v. Cox*, 217 So. 2d 31, 34 (Miss. 1968)).
[23] Ex. P-B, § IV.
[24] Miss. Code Ann. § 89-1-55.

statutory requirements by publishing the notice in the *Southern Sentinel* for the four weeks preceding the sale and posting the notice at the Tippah County courthouse.[25] Nothing more was required by the deed of trust or the statute. The plaintiff has failed to satisfy his evidentiary burden or even argue that the sale did not comply with the statutory requirements.[26]

His argument instead seems to be that notice of the foreclosure sale should have been mailed to him. First, that type of notice was not required by the deed of trust or the statute. Second, even though not required, the defendants did send a letter to the plaintiff's home on October 20, 2021, informing him of the default and the impending foreclosure.[27] This letter was sent at a time when the plaintiff was the only resident at the home. Although he testified that his mail was stolen at times during this period, the defendants were not responsible to ensure he received the letter. "Mississippi law presumes that an individual receives a letter sent in the mail unless that individual can come forward with evidence to the contrary—a statement by a party that he [] did not receive the mail [] is insufficient as a matter of law to overcome the presumption."[28]

---

[25] Ex. D-C.
[26] *Stephens*, 324 So. 3d at 1179.
[27] Ex. D-B.
[28] *Neely v. Regions Bank, Inc.*, 262 Fed. App'x 630, 633 (5th Cir. 2008) (citing *Holt v. Miss. Emp. Sec. Comm'n*, 724 So. 2d 466, 471 (Miss. Ct. App. 1998)); *Miss. Farm Bureau Ins. Co. v. Coleman*, 876 F. Supp. 111, 114 (S.D. Miss. 1995).

The defendants provided notice of the foreclosure at the courthouse and in the local newspaper, which is all that was required by the deed of trust and the statute. The defendants went a step further and mailed notice to the home. As such, the defendants complied with all notice requirements prior to the foreclosure sale.

## IV. CONCLUSION

The plaintiff has lived on the property without making payments for roughly two years, paid no property taxes, failed to insure the property, and let the property fall into such disrepair the defendants are unable to maintain insurance on it.

He did not become a co-debtor by signing only the deed of trust. That signature satisfied Mississippi law and waived his objection to the encumbrance of the homestead he shared with his then-wife, but granted him no property rights in the home. The plaintiff was provided notice of the impending foreclosure, yet he took no legal action until a month after the defendants purchased the property at a valid foreclosure sale. Accordingly, it is hereby

**ORDERED**, **ADJUDGED**, and **DECREED** that the plaintiff has failed to carry his burden and a separate final judgment will be entered in favor of the defendants.

11

It is further **ORDERED** that the defendants are granted relief from the automatic stay in the plaintiff's bankruptcy case to pursue their state law remedies against the plaintiff for eviction. As the plaintiff has no personal liability for the debt that was secured by the property, the defendants hold no monetary claim against him and shall not pursue any such claim in this Court or elsewhere.

##END OF ORDER##